BEINHORN, RESPONDENT, v. GRISWOLD, APPELLANT.

(No. 1,443.)

(Submitted April 16, 1902.   Decided July 14, 1902.)

*Unfenced Land—Trespassing Cattle—Injury — Landowner's Liability.*

Political Code, Sec. 3258, and the custom of the state making the maintenance of a legal fence by a landowner a prerequisite to recovery for trespass by domestic animals of another, do not charge the landowner with the duty to keep cattle lawfully at large from coming on his land, or make their entry thereupon rightful, so as to make him liable for injuries to such animals caused by the existence of dangerous agencies on the land, but not wantonly or intentionally caused.

*Appeal from District Court, Lewis and Clarke County; Henry C. Smith, Judge.*

ACTION by Fred. Beinhorn against L. S. Griswold.   From a judgment for plaintiff, defendant appeals.   Reversed.

*Mr. Edward C. Russel,* and *Mr. Lewis Penwell,* for Appellant.

The issue is negligence.   Actionable negligence is the failure to do one's legal duty to others.   The law declares that it is man's duty to use such reasonable care in the use of his own property as to avoid injury to the lives or property of others. Widely divergent facts have given great latitude to this expression "reasonable care."   It must be read in the light of the maxim that every man is entitled to the proper use and enjoyment of his property without unreasonable restrictions or limitations.   Greater accountability is exacted for active injury than for passive or permissive injury.   The relations of injured to injurer is an essential factor.   The law exacts less care in. the case of a mere trespasser than in that of one coming upon the premises by the invitation, express or implied, of the owner. The law questions in this case may be resolved into the follow-

ing: (1) Are the owners of animals, lawfully running at large, trespassers, when such animals enter upon the unenclosed lands of a legal occupant? (2) What degree of care is it the duty of such legal occupant to give to avoid injury to such trespassing animals? (3) Will the fact that dangerous appliances or substances, used by him in the lawful and normal conduct of his business, upon his premises, may prove to be an attraction to trespassing animals, be construed by the law as changing the status of their owners from that of trespassers to that of invited guests?

Section 5152 of the Political Code reads as follows: "The common law of England, so far as it is not repugnant to or inconsistent with the constitution of the United States, or the constitution or laws of this state, or of the codes, is the rule of decision in all the courts of this state." Under the common law, every unwarrantable entry of a man or of his cattle upon the premises of another, enclosed or unenclosed, was a trespass, and the trespasser was liable in damages. (3 Bl. Com. 209, 211.) Our state has adopted laws barring the remedy for such damages, unless the lands are enclosed by a fence of stated construction. (Chap. XIII, Title VII, Part III, Pol. Code.) But this court has said in *Forrester* v. *B. & M. Mining Co.,* 21 Mont. 556: "A statute is not presumed to work any changes in the rules of the common law beyond what is expressed in its provisions, or fairly implied in them, in order to give them full operation. For the written law to effect a repeal of those doctrines of the common law which are not unsuited to our condition, the intent of the legislature to bring about the change must be clear; and, if the intent be not fairly evident, the common law remains the rule of decision." (Citing *Arthur* v. *Bokenham,* 11 Mod. 150; *Wilbur* v. *Crane,* 13 Pick. 284; *Hallman* v. *Bennett,* 44 Miss. 323; Endlich on Interpretation of Statutes, Sec. 127.) This court has applied this doctrine and has fully established the common-law rights of owners of land as thus modified by statute in *Monroe* v. *Cannon,* 24 Mont. 316, citing *Bileu* v. *Paisley,* 18 Ore. 47, in which the court well said: "The rule (as to trespass) was not founded on any

arbitrary regulation of the common law, but was an incident to the right of property. It is a part of that principle which allows every man the right to enjoy his property free from molestation or interference by others; it is simply the recognition of a natural right. The rule in question did not require to be adopted in order to be in force. It always exists where the right of private dominion over things real is recognized. It pertains to ownership. The legislature, in the exercise of the police powers of the state, may, no doubt, require the owners of land to fence them in a certain manner, and in default thereof to withhold from them a remedy for a trespass committed thereon by animals running at large;  *  *  * but to hold that one man has a right to permit his stock to go upon the lands of another, if not protected by a material inclosure, would be holding, in effect, that a man did not own what belonged to him. The legislature cannot legalize such a trespass." (*Stewart* v. *Benninger,* 138 Pa. St. 441; see, also, *Addington* v. *Canfield,* 66 Pac. 358; *May* v. *Poindexter,* 47 L R. A. (Va.) 588.) Cattle lawfully running at large are therefore trespassing when they enter upon the unenclosed lands of a legal occupant. Their grazing thereon is not even permissive, it is certainly not a matter of right. (*Egan* v. *M. C. Ry. Co.,* 24 Mont. 572.) One of the best expressed and most quoted decisions in point is that of Gibson, J., in *Knight* v. *Abert,* 6 Pa. St. 472. See, also, cases cited in *Monroe* v. *Cannon, supra,* especially, *Lazarus* v. *Phelps,* 152 U. S. 81; *St. Louis Cattle Co.* v. *Vaught,* 1 Tex. Civ. Ap. 388; *Norton* v. *Young,* 6 Colo. Ap. 187; *U. P. Ry. Co.* v. *Rollins,* 5 Kan. 167; *McNeere* v. *Boone,* 52 Ill. Ap. 181.

2. What degree of care is it the duty of a legal occupant to give to trespassing animals? This court has stated the general rule as to trespassers in *Egan* v. *M. C. Ry. Co., supra.* A trespasser cannot recover for injuries not wantonly or wilfully inflicted. (*O'Leary* v. *Brooks Elevator Co.,* 7 N. D. 554; *City* v. *Emmelman,* 108 Ind. 53; *Akers* v. *Ry. Co.,* 58 Minn. 544; *Sweeney* v. *Old Colony Ry. Co.,* 92 Mass. 368; *Stendal* v. *Boyd,* 73 Minn. 53; *Frost* v. *R R. Co.,* 64 N. H. 220; *Evansville R.*

*R.* v. *Griffin,* 100 Ind. 221; Thompson Neg. p. 1183, n; *Daniels* v. *R. R. Co.,* 154 Mass. 349; *Buck* v. *Amory Mfg. Co.,* 44 A, (N. H.) 809; *Redigan* v. *R. R. Co.,* 155 Mass. 44, 14 L. R. A. 276; *Hounsel* v. *Smyth,* 97 Eng. Com, L. Rep. 97, 731; Amer. Law Register, Vol. 2, N. S. 196.) "A mere passive acquiescence on the part of the owner or occupant, in the use of real property by others, does not involve him in any liability to them for its unfitness for such use." (Shearman & Redfield on Neg. Sec. 705.) "The rule is that he who enjoys the permission or passive license is only relieved from the responsibility of being a trespasser, and must assume all the ordinary risks attached to the nature of the place or the business carried on." (*Vanderbeck* v. *Hendry,* 34 N. J. Law, 467; see *Egan* v. *M. C. Ry. Co., supra; Reardon* v. *Thompson,* 149 Mass. 267; *Woodruff, Admr.* v. *Bowen,* 136 Ind. 441; *Taylor* v. *Haddonfield Turnpike Co.,* 58 N. E. (N. J.) 707, 41 L. R. A. 831; *Fitzpatrick* v. *Glass Co.,* 39 A. 675.) The same rule applied to adults is applied to children. (*Ryan* v. *Towar,* 87 N. W. 644; *Felton* v. *Aubrey,* 74 Fed. 350, and cases cited (Ky.); *Thomas* v. *Chicago, etc., Ry. Co.* (Ia.), 72 N. W. 783; *Brague* v. *N. C. Ry. Co.* (Pa.), 43 A. 987; *Ritz* v. *City of Wheeling* (W. Va.), 31 S. W. 993; *Baltimore, etc. Ry. Co.* v. *Bradford* (Ind.), 49 N. E. 390 (two-year-old child); *Ala. G. S. R. R. Co.* v. *Moorer* (Ala.), 22 S. 900; *Louisville R. R. Co.* v. *Vittoe's Admr.* (Ky.), 41 S. W. 269; *Shea* v. *Concord & M. R. R. Co.* (N. H.), 41 A. 774.) Such being the law as to human beings, even children, where human life is at stake, it certainly applies more strongly in the case of a trespass through animals, which are simply property, in the possession and under the will and control of their adult owners.

Shearman & Redfield on Neg. Sec. 720, says: "If cattle stray upon unenclosed land and injure themselves by eating deleterious matter which has been left there by the land owner, without any malicious intent, the latter is not liable to the owner of the cattle." (See also Thompson on Negligence, p. 298.) They cite *Bush* v. *Brainard,* 1 Cow. 78, where a straying cow was killed by drinking maple syrup on a

neighbor's unenclosed ' land; *Hess* v. *Lupton,* 7 Ohio, 216, where cattle drank brine, exposed on defendant's land; *Durham* v. *Musselman,* 2 Blackf. 96, where a straying horse was killed by a falling tree, fired by defendant on his unenclosed land. In *Tonawanda R. R. Co.* v. *Munger,* 5 Denio, 255, a trespassing horse fell into an unguarded pit; the court said: "Negligence is a violation of the obligation which enjoins care and caution in what we do. But this duty is relative and where it has no existence between parties there can be no such thing as negligence in the legal sense of the term. A man is under no obligation to be cautious and circumspect toward à wrongdoer." (See *Knight* v. *Abert, supra.*) In *McGill* v. *Compton,* 66 Ill. 327, there was an agreement between plaintiff and defendant that the live stock of each could pasture on the other's land; plaintiff's horse fell into defendant's unguarded slough well. Held, he could not recover. This is stronger than the trespass cases, plaintiff being a licensee by agreement.

A person having a poisonous tree on his land is not liable for injury to trespassing cattle. (*Pointing* v. *Noakes,* 10 Rep. 265, 2 Q. B. 281; see also *McNeer* v. *Boone,* 52 Ill. Ap. 181; *Hayden* v. *Rust,* 39 Ill. 186; *Hughes* v. *Hannibal Ry. Co.,* 66 Mo. 325; *Kerwhaker* v. *Cleveland Ry. Co.,* 3 O. St. 172; *Herold* v. *Meyers,* 20 Ia. 378; *R. R. Co.* v. *Carraher,* 47 Ill. 333.) The distinction between permissive and active injury is well set forth in *Morrison* v. *Cornelius,* 63 N. C. 346. In this case defendants left liquid containing saltpetre where plaintiff's cattle obtained easy access to it and died. *Ferguson* v. *Miama Powder Co.,* 9 O. Cir. Ct. Rep. 445, is a case where nitráte of soda was left exposed by defendant and plaintiff's cattle ate of it and died. Held, defendant not liable. In *U. P. Ry. Co.* v. *Rollins,* 5 Kan. 167, the court said: "The plaintiffs did infringe upon defendants' rights. They were wrongdoers themselves. Hence the defendants were absolved from all but slight care and liable only for gross or wanton negligence." We take it that the foregoing decisions and many others that might be cited establish as law that only slight care is demanded towards

trespassers; in fact, only to refrain from wanton and wilful injury; and that the court was wrong in defining the degree of care demanded by law of the defendant to free him from the liabilities of legal negligence.

*Messrs. Stranahan & Stranahan,* for Respondent.

Respondent's view of this case is that there is really but one question to be considered upon this appeal, viz.: Whether or not a land owner, who negligently leaves exposed, upon his unenclosed premises, where he knows stock are wont to stray, dangerous places or substances, whereby another's cattle straying thereon are injured, is liable for such injury. Cattle at large in this state are not trespassing when they stray upon the unenclosed lands of another. And owners have a right to permit them to run at large. (See *Smith* v. *Williams,* 2 Mont. 195; *Lyman* v. *Fant,* 9 Mont. 61; *McMasters* v. *Mont. Union R. Co.,* 12 Mont. 163; *Monroe* v. *Cannon,* 24 Mont. 316.) The old common-law rule relative to cattle running at large is not, nor was it ever, in force in this state nor any of the western states, with perhaps one or two exceptions. In addition to the Montana cases just cited, see *Kerwhaker* v. *Cleveland Ry. Co.,* 3 O. St. 172; *Young v. Harvey,* 16 Ind. 314; *New Orleans J. & G. N. R. R.* v. *Fields,* 46 Miss. 573; *Jones & Norris* v. *Nichols,* 46 Ark. 207; *Houghey* v. *Hart,* 62 Ia. 96; *Calkins* v. *Matthews,* 5 Kan. 191; *Buford* v. *Houtz,* 133 U. S. 321; *Fennel* v. *Senguin St. Ry.,* 70 Tex. 670; 2 Am. & Eng. Enc. (2d Ed.), 356 and 16 *Id.* 478, and cases cited; see also p. 494, same authority; 2 Sher. & Red. on Neg. (2d Ed.), Sec. 419; *Id.* 957; Thompson on Neg. 298, New Ed. Vol. 1, Sec. 957. The custom of the people of this state to allow cattle to run at large has become common law thereof and of many western states. The common law is the practice of the people by universal custom and consent. (1 Bouvier's Dict. 370; 6 A. & E. Law, 2d Ed., 271.)

It is a well established rule of equity that an injunction will be granted to prevent repeated trespasses. It was upon this theory that the action in *Buford* v. *Houtz, supra,* was brought

to restrain defendants from permitting their sheep from repeatedly trespassing upon plaintiff's unenclosed lands, and the Supreme Court of the United States held that there was no trespass, and that plaintiff by leaving his land unenclosed granted defendant an "implied license" for their sheep to stray or roam upon such unenclosed land. That such license is implied, see Sher. & Red. on Neg. Vol. 2, New Ed. 419; Ray on Neg. 592; *Houghey* v. *Hart, supra; N. O. R. R. Co.* v. *Fields, supra; Morris* v. *Fraker,* 5 Colo. 425. There are many other cases upon this proposition that might be cited. But, suppose that we admit for the sake of argument that plaintiff's cattle were technical trespassers. We yet contend that the judgment should be affirmed. See *Low* v. *Salt Lake City,* 44 Pac. 1050; Sher. & Red. on Neg. par. 97. Again, since the decision of *Buford* v. *Houtz,* and Montana cases, cited *supra,* it cannot be reasonably contended but what plaintiff has a right to allow his cattle to run at large upon the public domain of the United States. Then to that extent, at least, plaintiff had a right of pasturage, subject to the same right in others, adjoining defendant's right of property. They were then in the same position as owners of adjoining closes. If defendant had dangerous substance or place, or maintained a dangerous business and so negligently conducted it as to injure plaintiff's cattle, or plaintiff's cattle were injured by reason of getting through his defective fence, defendant was liable though a technical trespass may have been committed. Thus if A. and B. are adjoining land owners, and A.'s cattle get through B.'s defective fence and are injured upon B.'s land through any negligence of B., the latter is liable, though A.'s cattle have no right on B.'s land and are trespassing there. (*Saxton* v. *Bacon,* 31 Vt. 540; *White* v. *McNeil,* 33 N. Y. 731; *Hurly* v. *Neil,* 2 Hump. 551; *Lawrence* v. *Jenkins,* 8 Q. B. Law Rep. 275; *Powell* v. *Salisbury,* 2 Y. & J. Exch. 391; *Colvin* v. *Sutherland,* 32 Mo. App. 77; *Crowhurst* v. *Amersham Burial Bd.,* 4 Ex. Div. 5, 27 Weeks Rep. 95; *Firth* v. *Bowling Iron Co.,* 3 Com. Pl. Div. 254; 2 Sher. & Red. on Neg. par. 662, and cases.) The owner of the land is bound to take notice

of the natural propensities of domestic animals. (Ray on Neg. 598; *Sisk* v. *Crump,* 112 Ind. 504.) So, that even if the common law were applied to our conditions, the owner of cattle at large would be entitled to recover for injuries done if resulting from the negligent use of property by the owner. (16 A. & E. Law, 1st Ed., 419; Ray on Neg. 597; *Colvin* v. *Sutherland, supra.*) The owner of cattle lawfully running at large takes only the risks incident to their loss or injury from unavoidable accident. (*Jones & Norris* v. *Nichols, supra; Raiford* v. *Miss. R. R. Co.,* 43 Miss. 233; *Kerwhaker* v. *R. R. Co., supra; N. O. J. & G. N. R. R.* v. *Fields, supra.*)

Section 2296 of the Civil Code lays down the law as to negligence in this state, and creates a duty upon the part of the appellant in this case to so use his property as not to negligently injure that of defendant, and if he fails to perform that duty he is liable to plaintiff, unless the latter is guilty of contributory negligence. So that there can be no question of defendant's liability unless plaintiff was guilty of contributory negligence. The respondent had a right to presume that appellant would use reasonable care and caution to avoid accident to his (respondent's ) cattle from the cyanide. (7 A. & E. Law, 2d Ed. 391, cases in note.) Even if plaintiff knew of the danger, or had reason to apprehend it, it does not necessarily follow that he was guilty of contributory negligence. (*Id.* 392.) Contributory negligence is a question solely for the jury to determine under instructions from the court. (7 A. & E. Law, 2d Ed., 456.) The notice that appellant was conducting a cyanide process in which if properly conducted there was necessarily no harm, cannot affect his (respondent's) right to turn his cattle at large. (*Brown* v. *H. & St. J. Ry. Co.,* 27 Mo. App. 394; *Kerwhaker* v. *R. R. Co., supra.*) The only contributory negligence, if it can so be denominated, of respondent rests upon the theory of his allowing his cattle to roam at large. That this is not negligence where the common-law rule upon this question does not prevail, see *McMaster* v. *Montana Union, supra.* (*S. F. & A. W. Ry. Co.* v. *Geiger,* 21 Fla. 669; *McPheters* v. *Hannibal R. Co.,* 45 Mo. 22; *Houghey* v. *Hart,*

*supra; Jones* v. *Nichols, supra; McCoy* v. *Cal. Pac. Ry. Co.,*
40 Cal. 532.) This is the rule in a great majority of states.
(16 Am. & Eng. Law, 2d Ed., 378.) We admit, on the other
hand, that where the old common-law rule relative to cattle run-
ning at large does prevail, that the owner of stray cattle is
guilty of contributory negligence in allowing them to run at
large. The two rules in this respect are aptly stated in 16 A.
& E. Law, 2d Ed., 478-9.

MR. JUSTICE PIGOTT delivered the opinion of the court.

Action to recover damages for injuries alleged to have been
caused by the negligence of the defendant. The complaint
states that the defendant negligenty left exposed a vat contain-
ing poisonous liquid; that by reason of such negligence certain
cattle of plaintiff and of one Holm drank from the vat some of
the liquid, and died from the effects of the poison; and that
Holm assigned his demand for damages to the plaintiff. The
answer puts in issue the allegation of negligence, and avers that
the death of the cattle was caused by the carelessness of the
plaintiff and Holm. The plaintiff secured a judgment, and the
defendant moved for a new trial on several grounds, one being
the insufficiency of the evidence to prove negligence on the part
of the defendant. From the order denying a new trial the de-
fendant has appealed.

The facts upon which the plaintiff bases his allegations of
negligence are substantially these: During the year 1898 the
defendant was the lessee in possession of the Non-Such gold
mine and mill site. The property was not inclosed by a legal
fence. For the proper conduct of his mining operations he em-
ployed the cyanide process, using large quantities of poisonous
chemicals, consisting principally of cyanide of potassium, which
he diluted with water, and kept in suitable receptacles on the
surface of the mining property, but not sufficiently covered to
prevent easy access to the poisonous solution. In appearance it
resembled water. Cattle of the plaintiff and of Holm, while
ranging on the public domain, wandered over to and upon the

defendant's mine and mill site, and there drank the poisonous liquid contained in the vats or tubs. The defendant knew that the cattle were in the habit of straying upon his uninclosed property, and he had driven them away whenever he saw them there.

The plaintiff insists there is but one question involved, which he states thus: Is a "landowner who negligently leaves exposed upon his uninclosed premises, where he knows stock are wont to stray, dangerous places or substances, whereby another's cattle, straying thereon, are injured, liable for such injury?" He argues that, as the defendant's mining property was not inclosed by a legal fence, the cattle were not trespassing upon his property, but were rightfully thereon, and that therefore he owed to the plaintiff the duty so to use his property and conduct his business as not to injure the plaintiff's cattle; that, in failing to cover the poisonous solution so as to prevent the cattle from drinking of it, he violated this alleged duty, and as such negligence resulted in the death of the cattle, and consequent loss to the plaintiff, the defendant is liable in damages. In support of his contention the plaintiff cites *Monroe* v. *Cannon,* 24 Montana Reports, 316 (61 Pac. 863, 81 Am. St. Rep. 439), where the owner of pasture land was held entitled to recover the value of grass consumed by bands of sheep deliberately and intentionally driven on it by the herder in charge of them; the opinion containing the following language: "If in the case now under consideration the damage sustained by respondent had resulted from trespasses committed by cattle or sheep or other animals named in the statute, lawfully at large, and not under the direction and control of their owner, then appellant's position would be sound." Neither this language, nor anything said in the opinion, lends countenance to the contention of the plaintiff in the case at bar. The decision does not declare or define any duty owing by the landowner to the owner of straying cattle. These observations apply also to Section 3258 of the Political Code, which reads: "If any cattle, horse, mule, ass, hog, sheep, or other domestic animal break into any inclosure, the fence being legal, as hereinbefore provided, the owner of such

animal is liable for all damages to the owner or occupant of the inclosure which may be sustained thereby. This section must not be construed so as to require a legal fence in order to maintain an action for injury done by animals running at large contrary to law." Even if it be conceded that the cattle of the plaintiff were not wrongfully upon defendant's property, no liability would be incurred from the fact that they were injured while there, unless it was the defendant's duty to protect from injury all cattle on his property whose trespass was not of such a nature as to render their owners liable for the trespass. Counsel for the plaintiff urge that, if these cattle were not wrongfully on the defendant's property, they must have been rightfully there; asserting that if there was no remedy by action, there could not be a trespass. To this we cannot yield assent.

The owner is entitled to the exclusive possession of his land, whether fenced or not; and it is beyond the power of the legislature to prescribe, or of custom to create, a right in another to occupy the land or enjoy its fruits. Either written law or custom may withhold from the owner who does not fence his land a remedy for loss suffered by reason of casual trespasses by cattle which stray upon it, and may give a remedy for such trespasses to those only who inclose their land. By custom as well as by statute the common law of England has been so modified in Montana. This is undoubtedly a legitimate exercise of the police power. It falls far short, however, of conferring a legal right to dispossess the nonfencing owner. He may at pleasure lawfully drive the intruding cattle from his land, and keep them away from it. This is his right, for the cattle are trespassing. The owners of domestic animals hold no servitude upon or interest, temporary or permanent, in, the open land of another, merely because it is open. If the landowner fails to "fence out" cattle lawfully at large, he may not successfully complain of loss caused by such live stock straying upon his uninclosed land. For under these circumstances the trespass is condoned or excused,—the law refuses to award damages. While the landowner, by omitting to fence, disables himself from invoking the remedy which is given to

those who inclose their property with a legal fence, and while the cattle owner is thereby relieved from liability for casual trespasses, it is nevertheless true that the cattle owner has no *right* to pasture his cattle on the land of another, and that cattle thus wandering over such lands are not rightfully there. They are there merely by the forbearance, sufferance, or tolerance of the nonfencing landowner; there they may remain only by his tolerance.

The cattle-owning plaintiff did not owe to the land-owning defendant the duty to fence his cattle in; the latter did not owe to the former the duty to fence them out; neither of them was under obligation to the other in that regard. The defendant is not liable in this action unless he was negligent. There cannot be negligence without breach of duty. Hence, manifestly, the defendant was not guilty of negligence in omitting to prevent the plaintiff's cattle from going upon his unfenced land.

As has just been said, the straying of the plaintiff's cattle upon the defendant's land did not involve the violation of any legal duty upon the part of the defendant. There would therefore seem to be no basis for the plaintiff's charge of negligence on the part of the defendant, unless it consists in the defendant's alleged failure to protect the cattle from injury while on his land. The damage resulted from a permissive, not an active, cause of injury. We are asked to hold that the law imposed upon the defendant, in addition to the duty of refraining from intentional or wanton injury to the cattle, the duty so to use his property and so to conduct his mining operations thereon as to avoid all dangers to which these trespassing beasts might expose themselves. Counsel invoke the provisions of Section 2296 of the Civil Code, which is declaratory of the common law: "Every one is responsible * * * for an injury occasioned to another by his want of ordinary care or skill in the management of his property. * * *" Giving to the principle thus expressed full recognition, and measuring the rights of the parties by the test of negligence thus furnished, we are unable to find in the record evidence of acts or omissions

by the defendant constituting negligence in the management of his property. But the plaintiff contends that, irrespective of Section 2296, the defendant has been guilty of negligence in so using his property as to imperil, and in this case actually injure, the property of another. We think the principles which he invokes have no application to the facts disclosed by the record. To a naked trespasser or mere licensee by sufferance (if the expression may correctly be used) the landowner owes the duty to refrain from any wilful or wanton act causing injury to his person or chattels, and, after discovering that the trespasser is in imminent danger or immediate peril, to use reasonable care to avoid an active cause of injury. (*Egan* v. *Montana Central Railway Co.,* 24 Montana Reports, 569, 63 Pac. 831.) The rule is different in respect of those who go upon property because of the owner's invitation, either express or implied. As to such persons he is bound, at his peril, to use reasonable care and diligence in keeping his property in safe condition. To a mere licensee or naked trespasser the landowner does not owe the active duty of being diligent or using care in providing against the danger of accident. The distinction is well expressed in *Sweeny* v. *Old Colony & Newport Railroad Co.,* 10 Allen, 368, (87 Am. Dec. 644): "All the cases in the books in which a party is sought to be charged on the ground that he has caused a way or other place to be incumbered, or suffered it to be in a dangerous condition, whereby accident and injury have been occasioned to another, turn on the principle that negligence consists in doing or omitting to do an act by which a legal duty or obligation has been violated. Thus a trespasser who comes on the land of another without right cannot maintain an action if he runs against a barrier or falls into an excavation there situated. The owner of the land is not bound to protect or provide safeguards for wrongdoers. So a licensee who enters on premises by permission only, without any enticement, allurement or inducement being held out to him by the owner or occupant, cannot recover damages for injuries caused by obstructions or pitfalls. He goes there at his own risk, and enjoys the license subject to its

concomitant perils. No duty is imposed by law on the owner or occupant to keep his premises in a suitable condition for those who come there solely for their own convenience or pleasure, and who are not either expressly invited to enter, or induced to come upon them by the purpose for which the premises are appropriated and occupied, or by some preparation or adaptation of the place for use by customers or passengers, which might naturally and reasonably lead them to suppose that they might properly and safely enter thereon.   *   *   *   The gist of the liability consists in the fact that the person injured did not act merely for his own convenience and pleasure, and from motives to which no act or sign of the owner or occupant contributed, but that he entered the premises because he was led to believe that they were intended to be used by visitors or passengers, and that such use was not only acquiesced in by the owner or person in possession and control of the premises, but that it was in accordance with the intention and design with which the way or place was adapted and prepared or allowed to be so used. The true distinction is this: A mere passive acquiescence by an owner or occupier in a certain use of his land by others involves no liability; but, if he directly or by implication induces persons to enter on and pass over his premises, he thereby assumes an obligation that they are in a safe condition, suitable for such use, and for a breach of this obligation he is liable in damages to a person injured thereby."
The methods pursued by the defendant in the management and use of his property involved no danger to the plaintiff or his cattle, nor exposed either to risk, so long as he and they remained within the limits of the plaintiff's rights. The contention of the plaintiff rests upon the erroneous theory, heretofore considered, that the cattle owners hold a personal servitude upon, or the right of commons or profit in, all unfenced land, by virtue of which they are supposed to be entitled, as of right, to use for grazing and pasture all of the uninclosed lands of other persons. Such burden upon or easement in gross in open lands has not been granted, and does not exist. We have already decided that such use, while it does not constitute an

actionable wrong, is not the exercise of a legal right; and as the cattle owner possessed no right to have his live stock upon the defendant's land, and the latter was clothed with the unquestioned right to drive them away because they were not rightfully there, clearly the defendant had no active duty in respect of them while there. He was, of course, bound to refrain from intentional or wanton injury; if he stood by and knowingly permitted them to drink of the poisonous solution, without making an effort to prevent them from doing so, he might, perhaps, be liable; but neither of these conditions is in the case at bar.

We think there is no proof in the record which justifies the application of the doctrine of invitation, enticement, allurement or attraction. (*Deane* v. *Clayton*, 7 Taunt. 489, 531, 533; *Jordin* v. *Crump*, 8 Mees. & W. 782; *Ponting* v. *Noakes* (1894) 2 Q. B. 281; *Stendal* v. *Boyd*, 67 Minn. 279, 69 N. W. 899; *Twist* v. *Railroad Co.*, 39 Minn. 164, 39 N. W. 402, 12 Am. St. Rep. 626.) The soundness of the principles upon which the so-called "turntable" and similar cases are supported is not presented for decision.

We have read the opinions which are opposed to the conclusions here announced. They need not be referred to or discussed. We are entirely satisfied that our conclusions are based upon correct fundamental principles.

The order refusing a new trial is reversed, with costs to the appellant, and the cause is remanded.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY: I concur.

MR. JUSTICE MILBURN: Considering only the facts appearing in this case, I concur in the reversal of the order denying a new trial. I do not concur in all that is said in the opinion with reference to absence of duty owing by one person to another who is trespassing upon the premises of the former, or to the owner of live stock which wander upon such premises.