[No. 2444]

# WILLIAMS ESTATE COMPANY (A CORPORATION), RESPONDENT, v. NEVADA WONDER MINING COMPANY (A CORPORATION), APPELLANT.

[196 Pac. 844]

1. ANIMALS—OWNER NOT LIABLE FOR TRESPASS ON UNFENCED LAND.
   Owners of stock may permit stock to roam at will and graze over the public ranges and the unfenced land of private owners, and are not liable for trespass on unfenced land.

2. MINES AND MINERALS—OWNER TURNING CATTLE UPON PUBLIC RANGE NEAR CYANIDE POND HELD NOT NEGLIGENT.
   An owner who had annually turned cattle loose upon public range prior to the creation of a cyanide pond in close proximity to the range was not contributorily negligent in turning cattle loose upon the range, with knowledge of the proximity of such pond and its poisonous quality, without posting guards at the dangerous places.

3. MINES AND MINERALS—LANDOWNER REQUIRED TO EXERCISE CARE TO PREVENT ACCESS OF LIVE STOCK TO CYANIDE POND NEAR PUBLIC RANGE.
   A mine owner creating a cyanide pond in proximity to and in open view of public range, with knowledge of the poisonous nature of the contents and its attractions for cattle, is required to exercise reasonable care to prevent access to it by live stock.

4. NEGLIGENCE — LANDOWNER LIABLE FOR NEGLIGENTLY LEAVING POISONOUS. SUBSTANCES ATTRACTING TRESPASSING ANIMALS.
   Ordinarily one is not bound to keep his uninclosed premises in safe condition to avoid liability for injury to trespassing stock, but he is not permitted negligently to leave on his premises poisonous substances which will attract passing animals.

5. MINES AND MINERALS—CYANIDE POND OWNER HELD NEGLIGENT IN NOT PROTECTING CATTLE FROM DRINKING SOLUTIONS ESCAPING.
   Where the solution in a mine owner's cyanide pond, in close proximity to public range and in full view of cattle, penetrated the levee and flowed beyond a fence erected around pond to protect cattle, and on the day the cattle were killed by drinking the solution the fence was moved back a sufficient distance, the failure to build the fence far enough away from the levee and in not maintaining a better levee was properly found to be negligence proximately contributing to death of cattle. (Per DUCKER, J.)

6. MINES AND MINERALS—CONTRIBUTORY NEGLIGENCE OF HERDER OF CATTLE ATTRACTED BY CYANIDE POND HELD QUESTION OF FACT.
   The negligence of herder of cattle on a public range, who intercepted cattle headed for a cyanide pond, to which they

returned after he drove them to a point one-half mile from the pond and left them headed in an opposite direction to go for his mail, *held* a question of fact.

7. APPEAL AND ERROR—TRIAL COURT'S FINDING ON FACTS CAPABLE OF DIFFERENT INFERENCES NOT DISTURBED.
    Trial court's finding on undisputed facts as to contributory negligence, where reasonable men might honestly differ as to whether there was negligence, will not be disturbed on appeal.

8. MINES AND MINERALS—CONDITION OF CYANIDE POND FENCE AFTER INJURY TO CATTLE IMMATERIAL.
    A mine owner's liability for death of cattle drinking a poisonous solution escaping from an insufficiently fenced cyanide pond, in close proximity to and in full view of cattle on public range, depends on the condition of the fence at the time they were killed, regardless of the subsequent moving of the fence so as to make it a sufficient protection. (Per COLEMAN, J.)

APPEAL from Eighth Judicial District Court, Churchill County; *James A. Callahan,* Judge.

Action by the Williams Estate Company against the Nevada Wonder Mining Company. From judgment for plaintiff and from order denying motion for new trial, defendant appeals. **Affirmed. Petition for rehearing denied.** (SANDERS, C. J., dissenting.)

*Hugh Henry Brown,* for Appellant:

The evidence shows, without contradiction or conflict, that plaintiff's herder was in charge of the cattle; that he was fully cognizant of the danger to them; that he had it in his power to resort to effective measures to protect them from the danger, but failed to do so, and that his said failure was the sole and proximate cause of the death of the cattle.

Turning cattle loose or unattended near a dangerous agency, where plaintiff has power to protect them from defendant's negligence, but fails to do so, will defeat recovery. Dickey v. Railroad, 53 Pac. 347; La Riviere v. Pemberton, 48 N. W. 406; Keeney v. Railroad, 24 Pac. 233; Martin v. Stewart, 41 N. W. 538; Hindman v. Railroad, 22 Pac. 116; Milburn v. Railroad, 86 Mo. 104.

"The proximate cause was the want of ordinary care

on the part of those in charge of the sheep," and not the negligence of defendant in allowing the cyanide to escape. Sierra L. & L. S. Co. v. Desert P. & M. Co., 229 Fed. 982. "Animals are not at large if they are under the control of a person having the right of control." 3 C. J. 129. Where the herder of animals is negligent at a railroad crossing, there cannot be a recovery. Hager v. S. P. Co., 98 Cal. 309; Louisville Co. v. Stommel, 126 Ind. 35; Schoefert v. Railroad, 62 Iowa, 624; Rheimer v. Railroad, 36 Minn. 120.

If a plaintiff ignore warning of danger, and fail to do what an ordinarily prudent man would do under the circumstances, he is guilty of contributory negligence, and cannot recover. B. & P. Ry. Co. v. Jones, 95 U. S. 439; Railroad v. Schumacher, 152 U. S. 81; Guild v. Pringle, 145 Fed. 312; Frank v. Suthon, 159 Fed. 174; McConnell v. Fernley, 34 L. R. A. 609; Hart v. N. P. Co., 96˙Fed. 180; Dorsam v. Kohlman, 20 L. R. A. 881.

The owner of unfenced mining property is not liable for cattle straying thereon from the public domain and drinking cyanide water. He is under no legal liability to fence the cattle out. Beinhorn v. Griswold, 69 Pac. 557. Where animals come upon unfenced land of another, though no action for trespass lies, their presence is not a matter of right, and recovery cannot be had for injuries suffered. Knight v. Abert, 6 Pa. 472; Hughes v. H. & S. J. R. R. Co., 66 Mo. 325; Turner v. Thomas, 71 Mo. 596; Calkins v. Mathews, 5 Kan. 191; McNear v. Boone, 52 Ill. App. 181.

Recovery cannot be had for cattle killed by substances used in the prosecution of lawful business on the premises. Little Rock Co. v. Dicks, 52 Ark. 402; Kirk v. Railroad, 41 W. Va. 722; Railroad v. Phillips, 12 South. 825; Ferguson v. Miami P. Co., 9 Ohio C. C. 445.

Presumption that defendant will perform his duty will not relieve plaintiff of the obligation of exercising ordinary care on his own part. Solen v. Railroad, 13 Nev. 106; Hutson v. S. P. Co., 120 Cal. 701; Wabash R. R. v. Central T. Co., 23 Fed. 738.

Plaintiff cannot recover when the accident is the result of his own negligence, or when the danger was so obvious and threatening that a reasonably prudent man would have avoided it, if in his power to do so. The greater the risk, the greater the degree of care required on the part of plaintiff. Konig v. Railroad, 36 Nev. 181.

One who knows of danger and negligently puts himself in its way, or who has power to avoid it and does not do so, cannot recover. His negligence is the proximate cause. Crosman v. S. P. Co., 44 Nev. 286; 8 U. S. Cyc. 884.

*John D. Hoyt* and *Cooke, French & Stoddard,* for Respondent:

The cattle of respondent were lawfully on the public domain. Buford v. Houtz, 133 U. S. 320; Stearns v. U. S., 152 Fed. 900. Appellant owed respondent the duty of using reasonable care to protect the cattle known by him to be lawfully on the public domain. 1 R. C. L. 1134; 3 C. J. 151.

Failure to maintain a suitable fence and to confine the cyanide solution within it was such a violation of duty as to make appellant liable for all damages occasioned thereby. The principle that a stockowner assumes the risk of all damage occasioned his stock while at large has been universally abandoned. Railroad v. Newman, 94 Ark. 458, 127 S. W. 734, 28 L. R. A. (N. S.) 83. The same departure from the principles of the common law obtains in this state. Rev. Laws, 2337; Chase v. Chase, 15 Nev. 259; Pyramid L. & S. Co. v. Pierce, 30 Nev. 253. And even where the common-law rule has remained unchanged, the owner of animals is allowed to recover where they have been attracted to their destruction. Bush v. Brainard, 1 Cow. (N. Y.) 78. One must use his own property so as not to injure that of another. 1 R. C. L. 1133; Railroad v. Harrison, 80 South. 683.

The negligence of appellant cannot be questioned. Even though no negligence be shown, the company is

liable. One who brings on his own land anything that is likely to do mischief if it escapes, must keep it at his peril. If he does not do so, he is liable for all damages which are the natural consequence of its escape. Fletcher v. Rylands, L. R. 4 H. L. 330; 20 R. C. L. 74-79, 435, 436,

By the Court, DUCKER, J.:

This action was brought to recover damages for the loss of certain cattle running on the public range, which were killed by drinking cyanide solutions. The case was tried before the court without a jury, and judgment was rendered in favor of respondent for the value of cattle destroyed in the amount of $860. A motion for a new trial was made, which was denied by the court. From the judgment and order of the court denying its motion for a new trial, the mining company appeals.

The respondent moved to strike the bill of exceptions and record on appeal upon the ground that it was not properly certified. As we have concluded to affirm the judgment of the lower court on the merits, we will not pass upon the motion.

The salient facts are substantially as follows:

The appellant is a mining company and is engaged in the business of mining in this state. On March 29, 1918, and for a number of years prior thereto, this company owned and operated a mill at the town of Wonder, in Churchill County, Nevada. The cyanide solutions discharged from the mill flowed down a slope for a mile or so and were there collected in a pond. The pond was situate for the most part on mining ground owned by the mining company, but extended over onto the public domain. These cyanide solutions are highly poisonous, and, as they resemble water, are attractive to cattle and other live stock. These facts were known to the company, which, in order to protect stock from the danger, kept the pond fenced with a barbed-wire fence, and posted notices about the pond warning the owners of

live stock of the vicinity of the pond and its dangerous contents. It is difficult to impound these cyanide solutions, and the company generally kept two men engaged in this work. It had two men there employed on March 29, 1918. On this day the cyanide solutions broke through the levee of the pond at a point close to the fence and flowed outside of the fence. The pond was visible from the public range where stock generally ranged the greater part of the year.

The respondent is a corporation engaged in the livestock business, and it and its predecessors in interest, on March 29, 1918, and for a long time prior thereto, had cattle running on the public range in the vicinity of the pond. On this date fourteen head of respondent's cattle came from the open range to where the cyanide solutions had broken through and flowed beyond the fence line. They drank of the solutions and were killed. The place where the cattle were killed was on the appellant's land. At this point the fence was in good condition, but at another point about a quarter of a mile from where the cattle were killed the fence was in such a poor condition that a person, on the day before, was able to ride a horse over the wires, which were submerged in the mud, and drove cattle that had gotten inside the inclosure out over the wires. After the cattle were killed, and on the same day, it appears that respondent extended the fence back from the pond and beyond the dead cattle.

On the day the cattle were killed, one Caldwell, who was in charge of respondent's cattle, saw a bunch of cattle headed toward the pond. He intercepted them and, driving them back a distance of a quarter to a half a mile, turned and rode over to the town of Wonder to get his mail. When he left them the cattle were headed away from the pond and were something like one-half mile therefrom. After talking with a person about fifteen minutes he rode to the postoffice, and while he was getting his mail out of the box he was informed that

the cattle were coming over the hill.    He immediately jumped on his horse and proceeded to where the solutions had escaped under the fence, and found the cattle dead.

According to the testimony of two witnesses who saw the cattle coming over the open range, and saw Caldwell intercept them, as soon as he left them they turned back and continued their journey toward the pond.

The trial court was of the opinion, expressed in its written decision, that Caldwell was not guilty of negligence, and held that the negligence of the appellant in permitting the cyanide solutions to escape from the pond and flow outside of the fence was the proximate cause of the death of the cattle and consequent injury to respondent.

Appellant's main contention is thus summarized by its counsel: That the evidence shows without contradiction or conflict that plaintiff's herder, John Caldwell, was in charge of the cattle on March 29, 1918; that he was fully cognizant of the danger threatening the cattle; that he had the power to protect the cattle from said danger, and that he failed and neglected to take such measures; and that his said failure was the sole and proximate cause of the death of the cattle.

Appellant makes certain other contentions, but the facts of this case do not bring it within the principles recognized and applied by the authorities cited.    This is a case involving the right of cattle to run at large upon the public range of this state, and does not come within the doctrine that a recovery for damages is barred where the owner of live stock turns them loose unattended in the face of known danger; or where a herder of live stock drives them or negligently allows them to go into known danger, as in the case of Sierra Land & Stock Company v. Desert Power & Mill Company, decided in the federal court of the district of Nevada.

1.   There is no law in this state requiring the owners

of cattle or horses to keep them within inclosures. They may, and in the great majority of cases do, lawfully permit their stock to roam at will and graze over the public ranges, and also over the unfenced land of private owners. In fact, a herder of horses or cattle upon public and other uninclosed lands is unknown to the customs of stockmen in Nevada, except in special instances, and would be impracticable and often detrimental to the thrift of such stock. These public ranges usually comprise large areas of territory and we may judge from the record that the country about the town of Wonder, over which respondent customarily permitted its cattle to range at large during the grazing season of the year, was quite extensive. It was a lawful act for the respondent to turn its cattle loose upon the range unattended by any herder, and if the stock, following the bent of their propensities, wandered upon the uninclosed lands of another, the respondent would not be liable for trespass. Chase v. Chase, 15 Nev. 259.

2. Conceding, as the evidence shows, that respondent knew of the proximity of the cyanide pond to the range and its poisonous quality, it was not contributory negligence for it to turn its cattle loose upon the range, as it and its predecessors in interest had been accustomed annually to do long prior to the existence of the pond. It could be held to no more care in this respect than that exercised by careful and prudent stockmen in this state, and that cannot be said to extend to the duty of herding cattle on the public ranges or posting guards at dangerous places maintained by others.

3. Appellant knew that the country was the habitat of stock belonging to respondent and other cattle owners, and of the deadly nature of the contents of the pond, and its attractions for cattle by reason of its resemblance to water, and its situation in open view of the surrounding range. Reasonable care and diligence was therefore imposed upon appellant to prevent access to it by such live stock. That appellant fully realized its

duty in this respect is shown by the measures taken to perform it; namely, the fencing of the pond, the employment of men to impound the solution and to drive cattle away, and the posting of notices of warning in the vicinity.

4. The evidence discloses that the cattle were killed on mining ground belonging to the appellant, at a point where the fence was close to the pond, and its counsel contends, for this reason, that the mining company is not liable. Ordinarily one is not bound to keep his uninclosed premises in safe condition to avoid liability for injury to trespassing stock. By reason of the general policy of the law of this state permitting cattle and horses to run at large on uninclosed land, he cannot maintain an action for such a trespass, except when the animals are herded or grazed upon his land contrary to the statute in such cases, but he is under no obligation to make it a safe pasture for stock. The owner of the land is not to be denied the ordinary use of his property, and the owner of stock trespassing upon it must accept the consequences of any injury that befalls them, for by permitting his stock to run at large, he is deemed to have assumed the risk of such injury. Knight v. Abert, 6 Pa. 472; Chemical Company v. Henry, 114 Tenn. 152. But this rule has a reasonable and well-recognized exception, and the facts of this case bring it clearly within the principle of this exception. The owner of land—

"is not permitted negligently to leave on his premises poisonous substances which will attract passing animals, nor can he place thereon dangerous instrumentalities, as traps baited with strong-scented meats, set so near the highway on the grounds of another that the animals of others will be lured on to his land from the place where they rightfully are to their injury or destruction. This results from the principle that where there is invitation, enticement, allurement, or attraction, a person is bound, at his peril, to use reasonable care and diligence

in keeping his property in a safe condition." 1 R. C. L. 1133, 1134.

The pond and its feeder from the mill were situated for the most part on appellant's mining claims, but in some parts extended onto the public domain. The contents were highly poisonous, and resembled water. The pond covered a considerable area and from the descriptions of it given by witnesses and furnished by the photographs in evidence, it must, at a distance, have had the appearance of a small lake of water. It was in open view of the cattle or other stock running upon the surrounding range. Watering places for cattle on the range were few and widely separated. Withal, the pond was highly attractive to thirsty cattle on the range and did allure them to its vicinity in search of water. The case of Beinhorn v. Griswold, 27 Mont. 79, 69 Pac. 557, 59 L. R. A. 771, 94 Am. St. Rep. 818, is relied upon by appellant as establishing the doctrine that a mine owner is not liable for cattle straying from the public domain onto unfenced mining property and drinking cyanide water. But there is a clear distinction between a case where animals stray upon premises, and where they are lured there by the appearances or conditions that appeal to their instincts and which are capable of destruction or injury. The former is governed by the same principle that obtains where a trespasser or bare licensee goes upon the premises of another who is bound thereby not to wilfully or wantonly injure him or fail to exercise due care to avoid it after his presence is discovered in a place of danger; while the latter rests upon the same principle that is recognized where one is brought upon the property of another by invitation, express or implied, and which imposes upon the owner the duty of keeping his premises in a reasonably safe condition. In the case of Beinhorn v. Griswold, supra, the cattle wandered upon the mine and mill site of the defendant and drank the poisonous liquid contained in vats or tubs which were not sufficiently covered. The

defendant knew that the cattle were in the habit of wandering upon his uninclosed property, and he had driven them away whenever he saw them there. There was nothing to indicate that the vats were visible from the public domain, or were instrumental in attracting the cattle there, either originally or at the time they drank of the cyanide water. The court stated that there was no proof in the record justifying the application of the doctrine of enticement, allurement, or attraction, and decided upon the principle that the death of the cattle was not wantonly or intentionally caused. The trial court, in its written decision, correctly distinguished it and similar cases from the instant case. The other authorities cited by appellant as in line with Beinhorn v. Griswold, supra, do not involve the doctrine of allurement, but merely go to the extent that the owner of uninclosed land cannot be held to the exercise of reasonable care and diligence in keeping his premises in a safe condition for the live stock of others coming upon it.

5. We think that the findings of the trial court to the effect that appellant did not exercise reasonable care in maintaining a proper fence about the cyanide solution and in preventing it from escaping from the levee and onto the lands where respondent's cattle had access to it are sustained by the uncontradicted evidence. In a few places the fence was in a poor condition. As previously stated, at one point about a quarter of a mile from where the cattle were killed, on the day before, the wires of the fence were submerged in mud, and one of the witnesses rode over them and drove cattle out of the inclosure. True, appellant's negligence here was not the cause of the death of the cattle, but it is a circumstance bearing upon the degree of care exercised by appellant to keep the cyanide solution in safe limits. At a place where the cyanide solution escaped from the levee and flowed beyond the fence where it was reached by respondent's cattle, the fence was in fair condition. It was, however, close to the levee at this point, and the slope of the

ground was such that when the solutions penetrated the levee they easily flowed beyond the fence. It would have been easy and prudent, as the events show, for appellant to have maintained the fence further away from the levee, for, on the same day the cattle were killed, it was quickly moved back beyond the dead cattle. The lack of reasonable care on the part of appellant in not maintaining a better levee at this point, and in not keeping the fence far enough away from the levee so as to enable its employees to detect and intercept the solutions escaping from it before the flow reached beyond the fence, was the proximate cause of the death of the cattle.

6. Appellant seeks to hold respondent responsible for the death of the cattle by reason of the acts of Caldwell, which, it is claimed, amount to an omission of duty sufficient to charge respondent with contributory negligence. The facts upon which it is sought to predicate Caldwell's negligence are undisputed. There is a statement in Caldwell's affidavit, introduced in evidence by stipulation, in which he expressed the belief that the cattle killed were not the same cattle he turned back from the pond, but it is entitled to no weight as against the positive testimony of two witnesses that the cattle killed were the same cattle headed off from the pond by Caldwell. The trial court in its opinion assumed that they were the same cattle, and was justified by the evidence in this conclusion. Caldwell was in no sense a herder of respondent's live stock, as assumed by appellant, nor in the sense of a vaquero moving a bunch of cattle from one place to another, or detaining them within certain limits. He had general charge of respondent's cattle running on its range, which covered a large area of territory, and his time and attention could not therefore be devoted entirely to driving cattle away from the pond and the immediate vicinity. Had he seen the cattle making for the pond and taken no measures to prevent them from reaching it, his conduct would have

been culpable, for, knowing the deadly nature of its contents, and having the opportunity and power to protect the cattle from danger, it would have been his duty to exercise reasonable care and diligence to insure their safety. As it was, he seems to have made an honest effort to discharge his duty as the exigencies of the occasion imposed it upon him. He quickly intercepted the cattle and drove them back to a point at least one-half mile from the pond and left them headed in an opposite direction, and then went to get his mail at Wonder. The event shows that he did not drive them far enough away to prevent their return to the pond. He judged wrongly, but the fact does not necessarily constitute negligence. The conduct of Caldwell must be tested by what a man of ordinary prudence would have done under the same circumstances.

Consideration of cases decided on different facts furnishes little aid. We are referred to the case of Sierra Land & Live Stock Company v. Desert Power & Mill Company, supra. In that case the sheep were killed by drinking cyanide water, but it appears that they were in charge of a herder who drove them to it after being warned repeatedly of the danger. The case of Crosman v. Southern Pacific Co., 42 Nev. 92, 173 Pac. 223, decided by this court, is cited as parallel in principle, but there the defendant charged with the exercise of reasonable care displayed none whatever, but recklessly placed himself in a position of known danger. The facts are widely variant from the instant case. Caldwell displayed diligence in discovering the cattle going toward the pond for water and in driving them back to what he judged was a reasonable distance from the pond.

7. We think it is quite evident that, upon the facts, reasonable men might honestly differ as to whether Caldwell acted as a person of ordinary prudence would have acted in the same situation. Consequently the

question whether he was negligent or not was one of fact for the trial court. Solen v. V. & T. R. R. Co., 13 Nev. 106; Weck v. Reno Traction Company, 38 Nev. 285; Norfolk v. Anthony, 86 S. E. 68. As the trial court held that Caldwell was not guilty of contributory negligence, and the question was one of fact, we would not be justified in reversing the decision.

The judgment of the lower court is affirmed.

COLEMAN, J., concurring:

8. I concur in the order of affirmance as embodied in the opinion of Mr. Justice DUCKER, and in all that is said by him, except as to the fence surrounding the cyanide pond. To my mind the condition of the fence at the time the cattle were killed, and the moving of it after the cattle had been killed, could in no way affect this case.

The sole question is: Was Caldwell guilty of negligence in failing to drive the cattle farther off? If the facts are undisputed, and admit of but one inference, the question is one of law; if disputed, or if capable of different inferences, it is a question of fact.

Conceding that the facts are not disputed, might reasonable persons draw opposite inferences as to the existence or nonexistence of negligence on the part of Caldwell? I am of the opinion that they might. I think the case falls squarely in the class alluded to in the quotation by this court in Solen v. V. & T. R. R. Co., 13 Nev. 129, from Railroad v. Stout, 17 Wall. 663, as follows:

"Upon the facts proven in such cases, it is a matter of judgment and discretion, of sound inference, what is to be the deduction to be drawn from the undisputed facts. Certain facts we may suppose to be clearly established from which one sensible impartial man would infer that proper care had not been used, and that negligence existed; another man, equally sensible and equally impartial, would infer that proper care had been used

and that there was no negligence. It is this class of cases and those akin to it that the law commits to the decision of a jury. Twelve men of the average of the community, comprising men. of education and men of little education, men of learning and men whose learning consists only in what they have themselves seen and heard, the merchant, the mechanic, the farmer, the laborer; these sit together, consult, apply their separate experience of the affairs of life to the facts proven, and draw a unanimous conclusion. This average judgment thus given it is the great effort of the law to obtain. It is assumed that twelve men know more of the common affairs of life than does one man; that they can draw wiser and safer conclusions from admitted facts thus occurring than can a single judge."

Applying the rule thus stated to the facts of the case, I think the question of Caldwell's negligence was one of fact for the trial court to determine, and that its finding is conclusive upon us.

SANDERS, C. J., dissenting:

I dissent.

I concede that where a cause is tried by the court without a jury, the same weight and consideration is given to its findings as to a verdict; and the same rules apply as to reversing them on appeal, on the ground of being contrary to evidence, as to a verdict of a jury. State v. Yellow Jacket S. M. Co., 5 Nev. 415. It follows that in this class of cases, as well as in all others, if there be substantial evidence to support the findings they cannot here be disturbed. But those findings must themselves be based upon legal and admissible evidence. Rulofson v. Billings, 140 Cal. 452, 74 Pac. 35.

I am of the opinion that the admission of evidence tending to show the bad repair and condition of the fence surrounding defendant's solutions pond, and the extension of the fence line after the injury so as to inclose the point where the cattle drank the cyanide

water, was error, and if the case on appeal depended upon the exceptions to the court's decision and findings as being influenced by such illegal and inadmissible evidence, I should be impelled to reverse the judgment. 38 Cyc. pp. 1942, 1943. But it does not.

Counsel for appellant frankly admits that if the respondent's cattle had been at large, as the phrase at large is employed in connection with cattle grazing, unattended, upon the public domain, the Nevada Wonder Mining Company would be liable, and he states expressly, in his brief, that this case is brought here for review for the purpose of obtaining an expression from this court as to whether or not, under the undisputed facts, the plaintiff's conduct with regard to the cattle, as a matter of law, directly contributed to the death of the cattle so as to bar recovery for their value.

There are a vast variety of things which must be regarded as matters of common knowledge; things which every adult person of ordinary experience or intelligence must be presumed to know; things which do not require to be pleaded or to be made the subjects of specific proof; and it is not within the province of a court or jury to find contrary to this knowledge. Gilbert v. The Flint & P. M. Ry. Co., 51 Mich. 488. The question before us comes within this principle.

The lower court found it to be the fact:

"That there is no available water in that vicinity suitable for cattle to drink; that it was natural for said cattle, impelled by thirst and uncontrolled and unrestrained and unattended, to come to the said water containing said solutions upon defendant's premises and to drink the same."

It is said that "what the community as a whole knows regarding animals the court knows." Chamberlayne on Modern Law of Evidence, sec. 767. And the latent trait of animals can be ascertained only by symptoms and outward manifestation. Sydleman v. Beckwith, 43 Conn. 9.

The court took judicial notice of the disposition of animals impelled by thirst to come to water. This common knowledge was used to fasten negligence upon the defendant. It follows, therefore, that the court should have taken judicial notice of the same fact in determining the reasonable precautions to be taken by Caldwell to prevent the cattle, impelled by thirst, from returning to the poisonous solutions and drinking the same. We are not required to surmise or conjecture what thirst-impelled cattle will do for water if left to follow their natural propensities, regardless of their distance from it. No intelligent reason can be assigned for Caldwell's leaving the cattle in their then condition and situation to follow their natural bent. His act under the peculiar circumstances was contrary to common knowledge and common prudence, and it was not within the province of the lower court to find contrary to such knowledge.

The rule is firmly established that when the facts are undisputed or clearly settled, and the course which common prudence dictated can be so clearly discerned that only one inference can be drawn, the question of negligence is one of law. 1 Shearman & Redfield on the Law of Negligence (6th ed.), sec. 56.

My associates, reasoning from the given state of facts, are of the opinion that Caldwell's care and diligence with regard to the cattle is to be measured by what an ordinarily prudent man would have done under the same circumstances, and whether he was negligent or not is a question concerning which reasonable men might honestly differ in opinion. I am not in accord with this position. Where one occupies a position, such as that of a "cow boss," employed to protect the interests of the live stock of his employer that roam unattended over the public domain in the vicinity of known danger, such as that of a cyanide reduction plant, care and diligence vary according to the exigencies which require vigilance and attention, conforming in amount and degree to the

particular circumstances under which they are to be exerted. Mechem on Agency (2d ed.), sec. 1279.

The cattle in question, though range cattle, came under the immediate observation and control of Caldwell, and, being in his hands, he was bound to use the same care in regard to them that men of ordinary prudence would exercise over their own property under the same circumstances. Maynard v. Buck, 100 Mass. 40. The degree of care required of one intrusted with the property of another is not less than that which is to be expected of one who deals with his own property. He is bound to exercise that degree of care and diligence which the nature of the undertaking and the time, place, and circumstances of the performance ordinarily and reasonably demand. Mechem on Agency (2d ed.), sec. 1275. The peril of leaving the cattle unattended, within reach of the cyanide water, must have been obvious to any man of ordinary intelligence, and much more so to an experienced "cow boss."

In this instance the person charged with the duty pertaining to his general undertaking to protect the interests of the particular and of all plaintiff's live stock from known dangers, however caused or created, voluntarily left the cattle intrusted to his care to follow their natural propensities, which led them to certain and sudden death. If there could be any reasonable doubt or uncertainty about what common prudence dictated under such circumstances, or as to what men of ordinary prudence would have done under the same circumstances with their own property, I might find some excuse for holding Caldwell's conduct to be proper and justifiable; but, as I view the facts, the course which common prudence dictated is so clear that but one inference can be drawn, and that is that the death of the cattle resulted from Caldwell's neglect or failure to exercise and observe the precautions ordinarily pursued in relation to his particular business of protecting the interests of the cattle in question from the known and impending danger.

I conclude that the cause should be remanded, with directions to the lower court to render and cause to be entered judgment for the defendant.

ON PETITION FOR REHEARING

*Per Curiam:*

Rehearing denied.