Clarence A. ELQUIST and Dallan
Elquist, Appellants,

v.

Warren RASMUSSEN, William Thomas
and David P. Thomas, Appellees.

No. 8864.

United States Court of Appeals
Tenth Circuit.

Aug. 3, 1967.

Milton A. Oman, Salt Lake City, Utah (Reed L. Martineau, Salt Lake City, Utah, was with him on the brief), for appellants.

Richard H. Moffat and H. Byron Mock, Salt Lake City, Utah, for appellees.

Before PHILLIPS, LEWIS and HILL, Circuit Judges.

DAVID T. LEWIS, Circuit Judge.

This is a diversity action between Nevada ranchers and Utah ranchers wherein the plaintiffs sought recovery of damages for the alleged wilful trespass of defendants' cattle upon plaintiffs' patented but unfenced rangelands in Nevada. The District Court for the District of Utah granted summary judgment favorable to defendants, holding, in effect, that under the undisputed facts developed by discovery process a wilful trespass could not be proved and that under Nevada law no liability exists for the simple trespass of stock wandering from the public domain upon unfenced private rangelands. Williams Estate Co. v. Nevada Wonder Mining Co., 45 Nev. 25, 196 P. 844. We affirm.

Plaintiffs are the fee owners of some four or five thousand acres within the area designated as the Grande Unit of the public domain and located in the northeast corner of Nevada. Other but smaller acreages within the Unit are privately owned, some by defendants. However, defendants are primarily Utah ranchers with their ranches located in Utah and the major portion of their operations occurring in that state.

Enclosed by fence within the Grande Unit is the Elquist Allotment which includes within its boundaries the pri-

vately owned lands of the parties and great acreage of surrounding grazing lands administered by the Bureau of Land Management as public domain. The east fence of the Elquist Allotment runs along the Utah-Nevada state line. Such fence was constructed by the BLM to confine and restrict permissive users of the public domain to lands within their designated areas and contains gates at various points.

Both plaintiffs and defendants hold standard BLM grazing permits for designated numbers of animals on the public domain in the Elquist Allotment. Prior to 1963, plaintiffs pooled their lands with those of the government in consideration for an exchange-of-use allowance whereby they were permitted to run a substantial number of livestock at large within the Grande Unit without charge. Under this arrangement, all parties holding permits from the Bureau of Land Management allowed their animals to graze in common on both the public domain and plaintiffs' unfenced private lands. In 1963, however, plaintiffs formally withdrew their exchange-of-use applications[1] and served notice upon all other government permittees that further use of their private lands for grazing and watering of livestock would not be permitted. Defendants, continuing to take advantage of their federal grazing privileges, turned their cattle into the Grande Unit at gates in the fence along the Utah-Nevada line and, perhaps attracted by the relative abundance of feed and water, defendants' cattle managed to find their way each year across the open range to plaintiffs' lands in the Elquist Allotment. This lawsuit resulted after defendants refused to comply with plaintiffs' demands that they refrain from grazing their cattle in the Grande Unit in order to insure that no further trespasses would occur.

The basic premise of plaintiffs' claim lies in the factual allegation that their patented lands contain the best and most water located within the Grande Unit and produce the best and most feed for stock; that such fact is known to defendants and that, as a consequence, defendants well know and intend that their cattle will graze upon plaintiffs' lands when the animals are turned loose anywhere near the vicinity. And, indeed, isolated language contained in Light v. United States, 220 U.S. 523, 31 S.Ct. 485, 55 L.Ed. 570, lends comfort to their argument wherein it is stated at p. 537, 31 S.Ct. at p. 488:

> "Fence laws do not authorize wanton and wilful trespass, nor do they afford immunity to those who, in disregard of property rights, turn loose their cattle under circumstances showing that they were intended to graze upon the lands of another."

However, we must interpret this language in view of the factual background then being considered and the undisputed factual background of the case at bar. *Light* presents a deliberate, systematic plan of non-compliance with regulatory requirements "equivalent to driving" cattle upon the lands of another for pasturage. Here, it is undisputed that defendants have complied strictly with the requirements of the BLM pertaining to the number of cattle, turn and area of grazing and have acted pursuant to federal permit which has been issued only after consideration of the capacity of the public domain, exclusive of the plaintiffs' lands, to support the quota allowed. The defendants' cattle entered the public domain through gates provided for that purpose. Under these circumstances, the likelihood of the animals straying to plaintiffs' lands, as a matter of law, cannot premise a claim for wilful trespass. To hold otherwise would frustrate the congressional policy of per-

---

1. Plaintiffs sought damages for trespass in the federal district court initially in 1963. The court at that time held that so long as plaintiffs continued to accept government pasturage and feed without charge, they were estopped to deny other government permittees use of their private lands in the Unit.

missive grazing upon the public domain and would, in this case, allow plaintiffs a virtual monopoly upon the Elquist Allotment.

Since Nevada has specifically rejected the common law rule that the owner of livestock is responsible for the confinement of his livestock, Chase v. Chase, 15 Nev. 259; Williams Estate Co. v. Nevada Wonder Mining Co., supra, the trespass here complained of can rise no higher than an incident of the open range and the judgment below is correct.